UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
                                                     :
JOSEPH P. LASALA, as assignee of                     :
Fatbrain.com, Inc.,                                  :
                                                     :      OPINION AND ORDER
                                                     :
                            Plaintiffs,              :      04 Civ. 9237 (SAS)
                                                     :
        - against -                                  :
                                                     :
NEEDHAM & COMPANY, INC.,                              :
J.P. MORGAN SECURITIES, INC., and                    :
MORGAN STANLEY,                                      :
                                                     :
                            Defendants.              :
-----------------------------------------------------X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

I.      **FACTUAL BACKGROUND**

        This action is an outgrowth of the pending partial settlement of 310

separate securities class actions, collectively known as *In re Initial Public Offering*

*Securities Litigation* (the "IPO Litigation"), coordinated in this Court for pre-trial

proceedings.[1]  In June 2004, the plaintiffs in the IPO Litigation reached a

-----

[1]     Familiarity with the IPO Litigation is assumed, but for a detailed
discussion of the allegations, *see In re Initial Public Offering Sec. Litig.*, 241 F.
Supp. 2d 281, 298-321 (S.D.N.Y. 2003).  As the Second Circuit recently described
an antitrust case based on the same alleged conduct: "Plaintiffs allege an epic Wall
Street conspiracy.  They charge that the nation's leading underwriting firms
entered into illegal contracts with purchasers of securities distributed in initial

settlement with the non-bankrupt issuer defendants ("Issuers") in 298 of the

coordinated cases ("Issuers Settlement"). This Court preliminarily approved the

settlement in February 2005.[2] As part of this settlement, which is awaiting final

approval from this Court, the Issuers agreed to assign their interest in excess

compensation claims ("Assigned Claims") against the underwriter defendants

("Underwriters") to a Litigation Trust, to be created upon final approval of the

settlement and to be represented by plaintiffs' counsel.[3] Notably, the Issuers

_____

public offerings. Through these contracts and by other illegal means, the underwriting firms allegedly executed a series of manipulations that grossly inflated the price of the securities after the IPOs in the so-called aftermarket. Plaintiffs contend that the firms capitalized on this artificial inflation, profiting at the expense of the investing public." *Billing v. Credit Suisse First Boston Ltd.*, 426 F.3d 130, 136 (2d Cir. 2005) (reinstating antitrust claims arising out of same alleged conduct as IPO Litigation).

[2]    *See generally In re Initial Public Offering Sec. Litig.*, 226 F.R.D. 186 (S.D.N.Y. 2005). While I refer to the "Issuers Settlement" in singular form, "[i]t cannot be emphasized enough that there is no single action called '*In re Initial Public Offering Securities Litigation*;' rather, these proceedings are simply a means of coordinating the pretrial management of 310 separate, albeit similar, securities class actions." *Id.* at 197. Similarly, the Issuers Settlement, although embodied in a single document, is actually a partial settlement of 298 separate, albeit similar, securities class actions with 298 separate settlement classes.

[3]    *See* Stipulation and Agreement of Settlement with Defendant Issuers and Individuals ("Issuers Settlement") ¶¶ 12-14, Ex. D to 2/10/04 Declaration of Steven Engel, counsel to Morgan Stanley at 17-19. The other major benefits of the settlement for the plaintiffs are: (1) the Issuers' guarantee of $1 billion, reduced by any recovery from the Underwriters in the IPO Litigation, the parallel antitrust case recently reinstated by the Second Circuit, or the Assigned Claims; and (2) the Issuers' reasonable cooperation in providing information regarding plaintiffs'

retained their potential claims against the Underwriters for underpricing of their IPOs, contribution, indemnification, or antitrust violations.[4]

The above-captioned litigation was initiated because of the convergence of two circumstances. *First*, all class-action settlements must gain final court approval, a lengthy process requiring the preparation and distribution of notices to settlement class members, followed by a fairness hearing.[5] The coordinated actions involve millions of settlement class members and 298 separate settlement classes, one for each settling Issuer.[6] The complexity of the settlement requires that the Court afford substantial time for reasonable distribution of notices, and thus it is impossible for the Issuers Settlement, reached in June 2004 and preliminarily approved in February 2005, to gain approval (if it is approved)

_____

claims against the Underwriters. *See In re Initial Public Offering Sec. Litig.*, 226 F.R.D. at 192-93.

[4] *See* Issuers Settlement ¶ 1(c).

[5] *See, e.g., In re Initial Public Offering Sec. Litig.*, 226 F.R.D. at 191 (quotation and citation omitted) (describing the procedure that must be followed before the court makes a final determination as to whether the proposed settlement is "fair, reasonable and adequate.").

[6] As of February 15, 2006, the IPO Litigation plaintiffs report that over fifteen million copies of the settlement notice have been distributed to class members. *See* 2/17/06 Letter from Melvyn I. Weiss, Chairman of the Plaintiffs' Executive Committee, to the Court at 1.

before the late spring or summer of 2006.[7]

  *Second*, when the Issuers Settlement was reached in 2004, the settling

parties recognized that the statute of limitations on some or all of the Assigned

Claims could expire before the class-action settlement approval process ran its

course.[8]  The settling parties were able to reach tolling agreements for the Assigned

Claims with most of the Underwriters, but a handful refused to enter into such

agreements.[9]  This refusal led to a dilemma – the assignment of claims to the

Litigation Trust cannot be finalized until the Issuers Settlement is finalized, but the

Assigned Claims against the non-tolling Underwriters would almost certainly be

---

[7] The fairness hearing is scheduled for April 24, 2006.  *See* Preliminary
Order in Connection with Settlement Proceedings ¶ 4, *In re Initial Public Offering
Sec. Litig.*, 21 MC 92 (Sept. 1, 2005).

[8] New York law applies to the Assigned Claims by virtue of a choice-
of-law provision in the underwriting agreements that form the basis of the claims.
*See LaSala v. Needham & Co.*, 399 F. Supp. 2d 421, 423 n.7 (S.D.N.Y. 2005)
("*LaSala I*") (citation omitted).  New York has a six-year statute of limitations for
breach of contract and unjust enrichment claims.  *See Francis v. Blaikie Group*,
372 F. Supp. 2d 741, 744 n. 6 (S.D.N.Y. 2005) (breach of contract, citing N.Y.
C.P.L.R. § 213(2)); *Golden Pacific Bancorp v. F.D.I.C.*, 273 F.3d 509, 518 (2d Cir.
2001) (unjust enrichment, citing N.Y. C.P.L.R. § 213(1)).  The statute of
limitations for breach of fiduciary duty depends on whether the plaintiff seeks
equitable relief (six years) or monetary relief (three years).  *See Cooper v. Parsky*,
140 F.3d 433, 440-41 (2d Cir. 1998).

[9] The non-tolling Underwriters are J.P. Morgan Securities, Inc.,
Needham & Company, Inc., Morgan Stanley, Allen & Company, Inc., E*TRADE
Securities, and Prudential Equity Group, LLC.

rendered worthless by the statute of limitations long before the settlement gains approval. The Issuers might have solved this dilemma by asserting the Assigned Claims as cross-claims in the IPO Litigation; but for business reasons they demurred,[10] even though the Issuers Settlement contemplates such a course of action to head off the expiration of the limitations period.[11]

Instead, the settling parties effected a series of conditional assignments for each Issuer's Assigned Claims. As the six-year anniversary of each Issuer's IPO approaches, that Issuer's Assigned Claims are transferred to Joseph LaSala, a New Jersey resident who (subject to court approval) will become

---

[10] *See* 4/13/05 Hearing Transcript at 29 (statement of Jack C. Auspitz, Issuers' liaison counsel) ("What the issuers wanted was until we knew there was a settlement, we wanted to have no litigation between the issuers and the underwriters because there are all kinds of relationships. What we wanted – once the settlement is final, then they get their assignment and off they go. The one exception is, there are these statute of limitations issues, and the compromise [plaintiffs and Issuers] reached in order that the statute of limitations would not bar the claims is to allow the claims to be filed by Mr. LaSala, but only on the condition that they are stayed.").

[11] *See* Issuers Settlement ¶ 16 (emphasis added) ("If, prior to the [final approval of the Issuers Settlement], the [IPO Litigation Plaintiffs] reasonably believe[] that the statute of limitations for an Issuer's Assigned Claim is at risk of expiring, and a tolling agreement is not in effect with respect to a given Underwriter subject to said Assigned Claim, the Plaintiffs' Executive Committee and the Issuers shall promptly seek the District Court's approval in the IPO Litigation *to serve and file the Assigned Claims in the appropriate Action*, subject to an immediate stay of the prosecution of such Claims once filed.").

the Litigation Trustee once the Issuers Settlement is approved.[12]  Under the terms

of these conditional assignments, LaSala was required to immediately do two

things: 1) file a separate action for each Issuer who has assigned claims to him; and

2) immediately seek a stay of that action.[13]  And on the occurrence of any one of

several specified events, his assignment automatically reverts to the assignor-

Issuer, or to the Litigation Trust after approval of the IPO Issuers Settlement.[14]

In accordance with these conditional assignments, LaSala has filed

over a hundred separate actions in this Court ("LaSala Actions").[15]  Each action is

the result of an essentially identical conditional assignment from a different Issuer,

and each action names as defendants one or more of the non-tolling Underwriters.

As each LaSala Action (with one exception) presents essentially identical facts,

---

[12]    *See* Stipulation and Order Governing All Present and Future "LaSala" Actions ("LaSala Stip") at 2.

[13]    *See* Conditional Assignment of Claims between Joseph LaSala and Issuer-defendant Fatbrain.com's successor-in-interest, Barnesandnoble.com, entered into November 15, 2004 ¶¶ 4-6 ("Conditional Assignment"), Ex. 2 to 11/19/04 Affidavit of Alexander H. Schmidt, counsel for LaSala, at 1-2.

[14]    Conditional Assignment ¶¶ 5-6.  LaSala's interest in each Issuer's claims reverts to the assignor-Issuer if, inter alia: 1) this court declines to approve the Issuers Settlement; or 2) the assignor-Issuer goes bankrupt before the Issuers Settlement is approved.  If this court approves the Issuers Settlement, the claims are automatically re-assigned to the Litigation Trust.

[15]    *See* Appendix I for a list of LaSala Actions.

LaSala and the non-tolling Underwriters have entered into a stipulation providing that the Court's resolution of issues in the above-captioned action ("*Fatbrain*") will control the resolution of the other LaSala Actions.[16]  The parties have since agreed that the stipulation also covers the resolution of defendants' renewed motion to dismiss this action.[17]

## II.  PRIOR PROCEEDINGS

The facts of *Fatbrain* have been adequately covered by my prior Opinions, with which the Court assumes familiarity.[18]  In brief, LaSala alleges that defendant Underwriters extracted excess compensation from their customers in

---

[16]      LaSala Stip at ¶¶ 1-2.  One non-tolling Underwriter, E*TRADE Securities, did not sign the stipulation.  The one LaSala Action involving E*TRADE will be adjudicated separately.  *See generally LaSala v. E*TRADE Secs. LLC*, 05 Civ. 5869, 2005 WL 2848853 (S.D.N.Y. Oct. 31, 2005).

[17]      *See* 11/22/05 Letter from Steven Engel to the Court ("In the original stipulation, the parties agreed that the Court's resolution of the dismissal motion in *Fatbrain* would dictate the resolution of the parallel motions that were filed, or would have been filed, in all the other LaSala cases . . . I am authorized to represent that the parties agree that the original stipulation should be understood to extend to the Court's resolution of the renewed motion to dismiss").

[18]      *See LaSala I*, 399 F. Supp. 2d at 421, 428-31 (granting stay requested by LaSala); *see also LaSala v. Needham & Co.*, 399 F. Supp. 2d 466, 472-76 ("*LaSala II*") (granting motion to dismiss on 12(b)(6) grounds, with leave to replead).  As with previous Opinions, although this Opinion will discuss only the facts of *Fatbrain*, the parties agree this Opinion also applies to the 113 other LaSala Actions subject to the parties' stipulation.  *See LaSala I*, 399 F. Supp. 2d at 431; *see also LaSala II*, 399 F. Supp. 2d at 476.

connection with the Fatbrain IPO. Out of those facts, he originally alleged three causes of action – (1) breach of contract, (2) unjust enrichment; and (3) breach of fiduciary duty.[19] In August 2005, I granted the stay requested by LaSala, holding that the interests of justice favored such a stay in order to preserve the conditional assignments and thereby prevent the forfeiture of the Assigned Claims that would otherwise result from the interplay of the statute of limitations and the class-action settlement procedure.[20]

Defendants also filed a motion to dismiss the *Fatbrain* action on a plethora of jurisdictional and substantive grounds. To provide information needed by the Court (in deciding whether to approve the settlement) and settlement class members (in deciding whether to object or opt-out), I decided to reach defendants' substantive arguments in order to take advantage of the opportunity to provide "a timely evaluation of the true worth of the Assigned Claims."[21]

I then dismissed all of LaSala's excess compensation claims without prejudice. LaSala's breach of contract claim is precluded by a 2005 New York Court of Appeals opinion dismissing a factually-indistinguishable claim brought by

_____

[19]     *See LaSala II*, 399 F. Supp. 2d at 470-71.

[20]     *See LaSala I*, 399 F. Supp. 2d at 428-29.

[21]     *LaSala II*, 399 F. Supp. 2d at 470.

the creditors' committee for a bankrupt issuer (eToys) against an underwriter of that issuer's IPO.[22]   Because the Issuers have withheld assignment of claims based on underpricing, LaSala's unjust enrichment claim fails as he cannot make the necessary allegation that the Underwriters enriched themselves at his (i.e., at the assignee-issuer's) expense.[23]   Finally, LaSala's fiduciary duty claim is barred by New York's three-year statute of limitations.[24]   These three claims are restated in LaSala's amended complaint "solely to preserve them for potential appeal."[25]

In dismissing the fiduciary duty claim, I noted in a footnote that this claim was similar to claims brought in other issuer-underwriter cases, such as *eToys* and *Xpedior Creditor Trust*, that had survived a motion to dismiss.  An issuer can state such a claim under New York law "where the complaining party sets forth allegations that, apart from the terms of the contract, the underwriter and issuer created a relationship of higher trust than would arise from the underwriting

---

[22]     *See id.* at 473-74 (discussing *EBC I, Inc. v. Goldman, Sachs & Co.*, 5 N.Y.3d 11, 16-23 (2005) ("*eToys*")).  *See also Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*, 399 F. Supp. 2d 375, 378 (S.D.N.Y. 2005) (assignee of issuer claims voluntarily withdrew breach of contract claim against underwriter in aftermath of *EBC I* decision).

[23]     *See LaSala II*, 399 F. Supp. 2d at 474-75.

[24]     *See id.* at 475.

[25]     10/25/05 Letter from Alexander H. Schmidt to the Court at 1.

agreement alone."[26]   Thus, I opined that "if the claim were not time-barred it could

survive."[27]

Taking a cue from this footnote, LaSala's second amended complaint

includes a new claim for breach of fiduciary duty, alleging that "[a]s a result of the

Fatbrain-Underwriter Defendants' conduct in violation of their fiduciary duties,

[defendants] received bonuses, commissions or other profits and benefits that their

beneficiary, Fatbrain, is entitled in equity to obtain."[28]   The Complaint goes on to

allege that defendants "hold the sums of property they received or derived through

the breach of fiduciary duties in constructive trust for Fatbrain, and Fatbrain is

entitled to equitable restitution of the sums or property held in constructive trust."[29]

The importance of these new allegations is that, under New York law, the statute of

limitations for a breach of fiduciary duty claim depends on whether the plaintiff

_____

[26]      *LaSala II*, 399 F. Supp. 2d at 475 n.68 (quotation and citation
omitted).

[27]      *Id.*

[28]      Second Amended Complaint ("Complaint") ¶ 35.

[29]      *Id.* ¶ 36.  Aside from the remedy requested, LaSala's new breach of
fiduciary duty claim is identical to the one I dismissed in *LaSala II*.  *Compare id.*
¶¶ 28-30 (claim for breach of fiduciary duty, replead solely to preserve for
appellate review); *with id.* ¶¶ 32-34 (same allegations, appearing as part of new
claim for breach of fiduciary duty seeking "equitable restitution" and a
constructive trust).

-10-

seeks equitable relief (six years) or monetary relief (three years).[30]  As each LaSala

Action was filed immediately before the six-year anniversary of each Issuer-

assignor's IPO, a breach of fiduciary duty claim is timely only if it can properly be

characterized as seeking equitable relief.

Defendants again move to dismiss pursuant to Rules 12(b)(1) and

12(b)(6) of the Federal Rules of Civil Procedure.  In addition to repeating their

standing and jurisdictional arguments from the first motion to dismiss,[31] defendants

argue that LaSala cannot revive his stale legal claim for breach of fiduciary duty

merely by repackaging it as an equitable claim for a constructive trust.  Defendants

also argue that LaSala's new cause of action actually seeks a remedy at law

governed by the three-year limitations period.[32]

## III.    LEGAL STANDARD

### A.      Standard of Review

---

[30]     *See supra* note 8.

[31]     *See LaSala II*, 399 F. Supp. 2d at 471 (citation omitted) (summarizing
defendants' 12(b)(1) arguments: "Defendants first question LaSala's standing,
arguing that his assignment did not convey a sufficient personal interest in the
Assigned Claims.  Defendants also argue that this court lacks diversity jurisdiction,
both because Fatbrain (a non-diverse party) should be considered the real party in
interest, and because the assignment to LaSala should be considered a collusive
assignment made solely to create diversity jurisdiction.").

[32]     *See* Memorandum in Support of Defendants' Motion to Dismiss the
Second Amended Complaint ("Def. Mem.") at 6-12.

### 1. Rule 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for the dismissal of a claim when the federal court "lacks jurisdiction over the subject matter." In considering a motion to dismiss for lack of subject matter jurisdiction, the court must assume the truth of the complaint's factual allegations.[33] However, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it."[34] In fact, "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits."[35] Plaintiff bears the burden of establishing the court's jurisdiction by a preponderance of the evidence.[36]

### 2. Rule 12(b)(6)

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss should be granted only if "'it appears beyond doubt that the plaintiff

---

[33] *See Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

[34] *Id.* (citation omitted). *Accord J.S.* ex rel *N.S. v. Attica Cent. Schools*, 386 F.3d 107, 110 (2d Cir. 2004).

[35] *LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999). *Accord APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003).

[36] *See Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002).

can prove no set of facts in support of his claim which would entitle him to relief.'"[37]  The task of the court in ruling on a Rule 12(b)(6) motion is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."[38]  When deciding a motion to dismiss, courts must accept all factual allegations in the complaint as true, and draw all reasonable inferences in plaintiff's favor.[39]

### B.    Article III Standing

### 1.    In General

"Whether a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy is what has traditionally been referred to as the question of standing to sue."[40]  Federal courts must determine standing at the threshold of every case: "[i]t would violate principles of separation of powers for us to hear a matter that was not a case or

---

[37]    *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

[38]    *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York*, 375 F.3d 168, 176 (2d Cir. 2004) (quotation and citation omitted).

[39]    *See Ontario Pub. Serv. Employees Union Pension Trust Fund v. Nortel Networks Corp.*, 369 F.3d 27, 30 (2d Cir. 2004) (citation omitted).

[40]    *Sierra Club v. Morton*, 405 U.S. 727, 731-32 (1972).  *Accord Nat'l Helicopter Corp. of Am. v. City of New York*, 137 F.3d 81, 87 (2d Cir. 1988).

controversy and therefore not delegated to the judiciary under Article III."[41]  At an

"irreducible constitutional minimum," Article III standing requires that the plaintiff

"have suffered an injury in fact--an invasion of a legally protected interest which is

(a) concrete and particularized; and (b) actual or imminent, not conjectural or

hypothetical."[42]  While the party invoking the court's jurisdiction bears the burden

of establishing standing,[43] "when standing is challenged on the basis of the

pleadings," the court "'accept[s] as true all material allegations of the complaint,

and . . . construe[s] the complaint in favor of the complaining party.'"[44]

### 2. Assignee Standing

---

[41]     *Vermont Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 381-82 (2d Cir. 2000) (citation omitted).  *Accord United States v. Hays*, 515 U.S. 737, 742 (1995) (citation omitted) (alteration in original) ("[t]he federal courts are under an independent obligation to examine their own jurisdiction, and 'standing is perhaps the most important of [the jurisdictional] doctrines.'")

[42]     *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations and quotation omitted).  Article III standing also requires that there be "a causal connection between the injury and the conduct complained of" and that it is "likely . . . that the injury will be redressed by a favorable decision." *Id.* at 560-61.

[43]     *See id.* at 561; *see also Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329-30 (2d Cir. 1997).

[44]     *United States v. Vazquez*, 145 F.3d 74, 81 (2d Cir. 1998) (*quoting Warth v. Seldin*, 422 U.S. 490, 501 (1975)).  *Accord Irish Gay & Lesbian Org. v. Giuliani*, 143 F.3d 638, 650 (2d Cir. 1998) (general allegations of harm arising from defendant's conduct are sufficient to establish standing at pleading stage).

In general, legal claims are freely assignable, [45] and the Supreme

Court held in *Vermont Agency* that the "assignee of a claim [does have] standing to

assert the injury in fact suffered by the assignor."[46]  But the Second Circuit has

noted that the term "claim" as used in *Vermont Agency* "cannot simply refer to a

right to bring suit," as such a construction would conflict with other Supreme

Court precedent holding that a statutorily-granted right to bring suit was held

insufficient, by itself, to confer Article III standing.[47]  Logically, then, a valid

assignment of a claim must transfer not just the authority to initiate a lawsuit, but

also an actual interest in the outcome of the suit.  In other words, "[t]here are

'assignments', and then there are assignments."[48]

The typical scenario for a valid assignment creating standing is when

"the assignee, obtaining the assignment in exchange for some consideration

running from it to the assignor, replaces the assignor with respect to the claim or

---

[45]     *See Titus v. Wallick*, 306 U.S. 282, 288-89 (1939); *Advanced Magnetics, Inc. v. Bayfront Partners*, 106 F.3d 11, 17 (2d Cir. 1997).

[46]     *Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 773 (2000) ("*Vermont Agency*").

[47]     *Connecticut v. Physicians Health Servs. of Conn.*, 287 F.3d 110, 117 n.8 (2d Cir. 2002) ("*Physicians Health*"), discussing *Lujan*, 504 U.S. at 571-78.

[48]     *APCC Servs. v. Sprint Commnc'ns Co.*, 418 F.3d 1238, 1250 (D.C. Cir. 2005) (Sentelle, J., concurring in part and dissenting in part).

the portion of the claim assigned, and thus stands in the assignor's stead with respect to both injury and remedy."[49]  Thus, in order to be able to sue in his or her own name, the assignee must obtain *ownership* of the claim, as opposed to merely a power of attorney regarding the claim.[50]  Transfer of ownership is manifested by the assignor's "intention to make the assignee the owner of [the] claim,"[51] although an assignment is not rendered invalid by an additional agreement that the transferee must account for proceeds of a suit brought on a claim.[52]

## IV.    DISCUSSION

In *LaSala II*, I assumed without deciding that I had jurisdiction over this action, and proceeded to dismiss this action on 12(b)(6) grounds without

---

[49]    *Physicians Health*, 287 F.3d at 117.  *Accord Richstone v. Chubb Colonial Life Ins.*, No. 97 Civ. 3481, 1999 WL 287332, at *1 (S.D.N.Y. May 7, 1999) (assignment conveyed standing when, *inter alia*, "it is the purported assignee, not the assignor, who is accorded discretion in choosing whether to pursue claims, and the document does not reserve to [assignor] any control over the subject matter.").

[50]    *Advanced Magnetics, Inc.,* 106 F.3d at 17.

[51]    *Id.*  No particular form of assignment is required, as long as the language used manifests intention to transfer, and in fact accomplishes, "'a completed transfer of the entire interest of the assignor in the particular subject of assignment.'"  *Id.* (quoting *Coastal Commercial Corp. v. Samuel Kosoff & Sons*, 199 N.Y.S.2d 852, 855 (4th Dept. 1960)).

[52]    *See Titus*, 306 U.S. at 288-89; *see also Advanced Magnetics, Inc.*, 106 F.3d at 17.

prejudice.  The information gained from the prior Opinion, and from affording

plaintiff the opportunity to replead, has been valuable both to the Court and to the

millions of settlement class members.[53]  But even if I had the ability to sidestep the

standing issue, which I do not,[54] I would find that LaSala's new claim is barred as a

matter of law.  Thus, no purpose is served by deferring consideration of

defendants' Article III standing argument any longer.[55]  Accordingly, LaSala's

---

[53]      The notice sent to class members was updated to reflect my dismissal
of the first Complaint, and the updated notice also directs interested class members
to check on all future developments with the Assigned Claims at the website set up
for information on the settlement.  *See* Order of October 19, 2005, *In re Initial
Public Offering Sec. Litig.*, 21 MC 92 (approving certain updates to the
previously-approved notice to settlement class members).  Accordingly, plaintiffs'
counsel in the IPO Litigation are directed to post this Opinion on the settlement
website, but they need not mail an additional notice to class members.

[54]      *See Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, __
F.3d __, No. 4-3000-CV, 2006 WL 164946, at *2 (2d Cir. Jan. 24, 2006) (citing
*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)) (even when
standing issue is close and merits of case can be easily rejected, "a district court
must generally . . . establish that it has federal constitutional jurisdiction, including
. . . that the plaintiff has Article III standing, before deciding a case on the
merits.").

[55]      At the same time, finding that LaSala has Article III standing does not
contradict the principle that "jurisdiction is to be assessed under the facts existing
when the complaint is filed."  *Lujan*, 504 U.S. at 569 n.4.  As detailed above, *see
supra* Part I, the facts existing when each LaSala Action was filed were that: (1)
the Issuers and plaintiffs had entered into a settlement including the assignment of
certain issuer-underwriter claims; but (2) the settlement would not become
effective (if ever) for *at least* a year, and probably two years.  If this were not a
class-action settlement governed by Rule 23, the assignment of claims would have
been effected in the summer of 2004, and the non-tolling Underwriters would not

claim is dismissed because (1) his conditional assignment was insufficient to confer Article III standing; and (2) even if LaSala did have standing, his new claim is time-barred under New York law because it sounds in law, not in equity.

## A.    Standing

LaSala misstates the proper inquiry when he urges this court to analyze his right to bring this action under Federal Rule of Civil Procedure 17(a), which requires that all actions shall be brought by the "real party in interest."  To determine whether LaSala has standing, the question is whether the conditional assignment of Fatbrain's claims to LaSala was a valid assignment transferring ownership of the claims, or whether it merely granted LaSala a power of attorney.  Put another way, on these facts the standing inquiry and the real party in interest inquiry boil down to the same question: whether the assignee has been granted a personal interest in the controversy.[56]

---

be able to challenge either standing or jurisdiction.  For example, defendants cannot dispute that the assignment of claims to the Litigation Trust would meet the requirements of Article III, as the Litigation Trust would have the ability to prosecute the case and possibly obtain a remedy.

[56]    *See APCC Servs.*, 415 F.3d at 1244-45 (per curiam) ("We see no basis for distinguishing the personal stake required under Rule 17(a) from the interest required for [assignee] standing"); *see also* 6A Charles Alan Wright and Arthur R. Miller, Edward H. Cooper, Fed. Prac. & Proc. Civ. 2d § 1542 at 330 (1998) ("[t]o the extent that standing . . . is understood to mean that the litigant actually must be injured by the [] action that he is assailing, then it closely resembles the notion of

By any measure, the interest granted to LaSala by the conditional assignment is far too limited to confer assignee standing. LaSala cannot be said to have ownership or control of Fatbrain's claims in any sense; the conditional assignment strictly limits LaSala's ability to prosecute "his" claims – he cannot negotiate a settlement, move for summary judgment, or participate in a trial.[57] In fact, LaSala needed to obtain special permission from Fatbrain even to oppose defendants' motion to dismiss.[58] Thus, because of the crippling restrictions on his authority as assignee, LaSala has no prospect of recovering a dime on these claims,

---

real party in interest under Rule 17(a), inasmuch as both terms are used to designate a plaintiff who possesses a sufficient interest in the action to entitle him to be heard on the merits.").

[57] Conditional Assignment ¶ 4 ("LaSala may file the Assigned Claims only for purposes of preserving the claims and avoiding the expiration of their statutes of limitations, and simultaneously with the filing of the Assigned Claims, LaSala must file an application seeking to stay the prosecution and defense of the Assigned Claims while the Court's approval of the Issuers Settlement remains pending."). Given this, the boilerplate recitation that "Fatbrain hereby assigns to LaSala all of Fatbrain's rights, title and interest in its Assigned Claims as defined by the Issuers Settlement," *id.* ¶ 2, cannot suffice to transfer to LaSala a real ownership interest.

[58] *See* 4/19/05 Letter from Jack C. Auspitz to the Court, Ex. A to 6/3/05 Declaration of Steven Engel (informing the court that "the Issuers [including Fatbrain] who have conditionally assigned claims to Joseph LaSala, the Litigation Trustee, will not assert that the conditional assignments are void if Your Honor rules on the motions to dismiss pending in several of the actions brought by LaSala before your Honor rules on the motions to stay these claims.").

for himself or for his assignor.[59]

The Second Circuit has found assignee standing lacking in cases where the assignee had far more control over the pursuit of assigned claims than LaSala. For example, in *Connecticut v. Physician Health Services,* the State of Connecticut claimed assignee standing based on an assignment from eight state residents, purporting to transfer the right to seek "appropriate equitable relief with respect to any cause of action [the assignors] may have as [managed care] plan participants of beneficiaries."[60] The Second Circuit held that this assignment did not convey a "concrete private interest in the outcome of the suit" – the assignors retained the right to seek damages, so "none of the remedies being sought [by the assignee] would flow to the State as assignee."[61] And in *Advanced Magnetics v.*

---

[59]    LaSala correctly asserts that an assignee's standing is not vitiated by an assignee's agreement to account to the assignor for the proceeds of a suit brought on the assigned claim. *See* Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Second Amended Complaint and in Support of Plaintiff's Cross-Motion for Consolidation ("Pl. Mem.") at 23 (citation omitted). For example, in a recent assignee standing case, the D.C. Circuit explained that, so long as any damage award is payable to the assignee "in the first instance," what is done with that damage award subsequently is irrelevant for standing purposes. *APCC Servs.*, 415 F.3d at 1245. But as LaSala, in his current personal capacity, could never receive any damage award from this action, in the first instance or in any other instance, this principle does not help him.

[60]    *Physician Health Servs.*, 287 F.3d at 112.

[61]    *Id.* at 118.

*Bayfront Partners*, the two assignments at issue did not convey standing because (1) the first assignment only assigned the right to bring suit, but withheld the right to receive the proceeds of the suit; and (2) the second assignment shared the defects of the first, and additionally was revocable at the pleasure of the assignor.[62]

For these reasons, LaSala as the assignee of Fatbrain's claims is the paradigmatic "nominal party" that cannot acquire Article III standing even by virtue of an assignment that is "valid as a contractual matter."[63]  Accordingly, this action must be dismissed for lack of standing.

### B.    "Equitable Restitution" Claim

#### 1.    *eToys*

The New York Court of Appeals held in *eToys* that "[a] cause of action for breach of fiduciary duty may survive, for pleading purposes, where the complaining party sets forth allegations that, apart from the terms of the contract, the underwriter and issuer created a relationship of higher trust than would arise from the underwriting agreement alone."[64]  According to plaintiff's allegations, a "relationship of higher trust" arose because "[issuer] eToys was induced to and did

---

[62]    *See Advanced Magnetics, Inc.*, 110 F.3d at 18.

[63]    *Physicians Health Servs.*, 287 F.3d at 118-19 (citation omitted).

[64]    *eToys*, 5 N.Y.3d at 20.

repose confidence in [underwriter] Goldman Sachs' knowledge and expertise to advise it as to a fair IPO price and engage in honest dealings with eToys' best interest in mind."[65]

Part of the underwriter's fiduciary duty to the issuer is the "fiduciary obligation to disclose any conflict of interest concerning the pricing of the IPO," including a duty to disclose compensation arrangements with its customers.[66] Goldman Sachs allegedly breached this duty by concealing from eToys its "divided loyalty" arising from its profit-sharing arrangements with its customers.[67] Following *eToys*, this Court and a Delaware state court have recently sustained

---

[65]    *Id.   Accord id.* at 21:

> Generally, a buyer purchases a seller's goods at a wholesale price and attempts to resell those goods at the highest possible profit. Such a transaction would negate any fiduciary duty concerning pricing advice as no rational seller would place trust in a buyer's pricing given the parties' opposing interests.  Here, in contrast, Goldman Sachs and eToys allegedly agreed to a fixed profit from the selling of the securities — Goldman Sachs was to receive about 7% of the offering proceeds.  Thus eToys allegedly believed its interests and those of Goldman Sachs were aligned: the higher the price, the higher Goldman Sachs' 7% profit.  Consequently, eToys allegedly had a further reason to trust that Goldman Sachs would act in eToys' interest when advising eToys on the IPO price.

[66]    *Id.* at 20.

[67]    *Id.*

breach of fiduciary duty claims arising from an underwriter's failure to disclose compensation arrangements to its issuer.[68]

## 2.   LaSala's New Claim

The *eToys* court, at the motion to dismiss stage, did not clarify whether it considered its newly-created cause of action for an issuer against its underwriter to be legal or equitable in nature, perhaps because "a motion to dismiss the complaint will not search out the nature of the relief or judgment to which a plaintiff might be entitled."[69] Nor has the issue been squarely addressed in other issuer-underwriter suits such as *Xpedior* or *Breakaway Solutions*. But on this motion, the nature of the relief sought by LaSala is outcome-determinative because of the statute of limitations issue.

---

[68]     *See Xpedior Creditor Trust*, 399 F. Supp. 2d at 385 (denying defendant underwriter's motion for summary judgment on breach of fiduciary duty claim, when plaintiff produced "substantial evidence" to support claim that issuer relied on underwriter to act in its best interest in pricing the IPO); *Breakaway Solutions, Inc. v. Morgan Stanley & Co.*, No. Civ.A. 19522-NC, 2005 WL 3488497, at *3 (Del. Ch. Dec. 8, 2005) (following *eToys* and *LaSala II*, court denied defendant underwriter's motion to dismiss, when plaintiff alleged breach of a fiduciary duty created between issuer and underwriter). While eToys, Xpedior and Breakaway Solutions are Issuer Defendants in the IPO Litigation, claims against their underwriters are not slated for assignment to the Litigation Trust because none of these (bankrupt) Issuers are parties to the Issuers Settlement.

[69]     *Lichtyger v. Franchard Corp.*, 18 N.Y.2d 528, 538 (1966).

Under New York law, "the statute of limitations for breach of fiduciary duty 'depends on the substantive remedy which the plaintiff seeks.'"[70] As already noted, actions seeking damages are considered actions at law, governed by the three-year limitations period, while actions seeking other types of relief are considered equitable in nature and governed by the six-year period.[71] Any plaintiff seeking equitable relief must establish as a threshold matter that he has no adequate remedy at law.[72] Moreover, "an equitable claim cannot proceed where the plaintiff has had and let pass an adequate alternative remedy at law."[73]

Defendants assert that LaSala (or more precisely, Fatbrain) "had and let pass," an adequate remedy at law, because this Court has held that an issuer plaintiff can recover damages at law for a breach of fiduciary duty by its underwriter.[74] Defendants similarly argue that, as LaSala cannot allege that

---

[70]    *Bouley v. Bouley*, 797 N.Y.S.2d 221, 223 (4th Dep't 2005) (quoting *Loengard v. Santa Fe Indus., Inc.*, 70 N.Y.2d 262, 266 (1987)).

[71]    *See Loengard*, 70 N.Y.2d at 266.

[72]    *See, e.g., Boyle v. Kelley*, 42 N.Y.2d 88, 89 (1977); *Klein v. Bower,* 421 F.2d 338, 344 (2d Cir. 1970) ("equity will not entertain jurisdiction where there is an adequate remedy at law").

[73]    *Norris v. Grosvenor Mktg. Ltd.*, 803 F.2d 1281, 1287 (2d Cir. 1986).

[74]    *See* Def. Mem. at 8 (citing *Xpedior Creditor Trust*, 399 F. Supp. 2d at 383).

-24-

plaintiff has any title or right to possession to the excess compensation allegedly received by defendants from their customers, a remedy for constructive trust is inappropriate here.[75]

LaSala responds that this Court has already determined that he has no adequate remedy at law for his claimed injuries, because in *LaSala II* I dismissed the breach of contract and unjust enrichment claims on the grounds that Fatbrain received all that it was entitled to receive from the underwriting agreement.[76] LaSala also argues that a breach of fiduciary duty claim seeking imposition of a constructive trust is a quintessential equitable claim under New York law. This theory of equity is based on section 138 of the Restatement (First) of Restitution ("the Restatement"), which provides that a party may seek the equitable remedy of

---

[75]     *Id.* at 13-14 (citing *Great-West Life Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002) (quotation and citation omitted) ("in cases in which plaintiff could not assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him, the plaintiff has a right to restitution at law through an action derived from the common-law writ of assumpsit").

[76]     Pl. Mem. at 13 ("This court has already held that [Fatbrain] was not damaged in the sense of suffering a loss due to a breach of contract or a quasi-contractual duty . . . [i]nstead, the underwriters recouped unjust profits and commissions from their fiduciary violations that should, in equity, be disgorged to LaSala. Accordingly, LaSala has stated, and can only state, an equitable claim for breach of fiduciary duty. He has no legal claim at this point.").

restitution for a breach of fiduciary duty.  Specifically, comment a to Section 138

of the Restatement provides that:

> A fiduciary who commits a breach of his duty as fiduciary is guilty
> of tortious conduct and the beneficiary can obtain redress either at
> law or in equity for the harm done.  As an alternative, the
> beneficiary is entitled to obtain the benefits derived by the
> fiduciary through the breach of duty.  Situations involving specific
> breaches of duty with the resultant creation of a constructive trust
> and an equitable lien in the proceeds in favor of the injured
> beneficiary are dealt with in [sections 190-201].[77]

In turn, section 190 provides that "where a person in a fiduciary

relation to another acquires property, and the acquisition or retention of the

property is in violation of his duty as fiduciary, he holds it upon a constructive trust

for the other."[78]  This cause of action is available even when, as here, the

defendant's enrichment was not at plaintiff's expense.[79]

But the fatal flaw in LaSala's argument is that the Court of Appeals in

---

[77]     Restatement (First) of Restitution § 138, cmt. a.

[78]     *Id.* § 190.  *Accord id.* § 197 ("where a fiduciary in violation of his
duty to the beneficiary receives or retains a bonus or commission or other profit, he
holds what he receives upon a constructive trust for the beneficiary").

[79]     *See id.* cmt. c ("the rule stated in [sections 190 and 197] . . . is not
based on the harm done to the beneficiary in the particular case, but rests upon a
broad principle of preventing a conflict of opposing interests in the minds of
fiduciaries, whose duty it is to act solely for the benefit of their beneficiaries").

*eToys* limited the scope of an underwriter's fiduciary duty to *disclosure* of compensation arrangements with customers.[80]  In other words, underwriters do not breach their fiduciary duty to issuers by *receiving or retaining* the "excess compensation" – rather, the breach is only in not *disclosing* the "excess compensation" to the issuer.[81]  As such, the Restatement and the cases relied upon by LaSala are inapposite, because those authorities justify a constructive trust when a defendant has breached its fiduciary duty to a plaintiff by *receiving* a benefit that should, in good conscience, be given to the plaintiff.[82]

---

[80]  *See eToys*, 5 N.Y.3d at 20 (recognizing a fiduciary duty "to the limited extent [of] requiring disclosure of [an underwriter's] compensation arrangements with its customers"); *see also id.* at 21 ("We stress [] that the fiduciary duty we recognize is limited to the underwriter's role as advisor.").  I also note that there are almost no citations to the Restatement of Restitution in New York cases.

[81]  *See id.* at 20 ("according to the complaint, eToys hired Goldman Sachs to give it advice for the benefit of the company, and Goldman Sachs thereby had a fiduciary obligation to disclose any conflict of interest concerning the pricing of the IPO.  Goldman Sachs breached this duty by allegedly concealing from eToys its divided loyalty arising from its profit-sharing arrangements with clients").

[82]  For example, LaSala places heavy reliance on *Design Strategies, Inc. v. Davis*, 367 F. Supp. 2d 630 (S.D.N.Y. 2005), where this Court held that a plaintiff has an equitable remedy of a constructive trust when an "inequitable gain inures to defendant either from direct wrongful appropriation or use of property actually belonging to plaintiff, or from improper dealings with third parties from which defendant derives benefits that in good conscience should accrue to plaintiff."  *Id.* at 644-45 (citation omitted).  But here, the alleged excess compensation was not itself a "direct wrongful appropriation" from Fatbrain, and the compensation arrangements were not "improper dealings" as such – the breach was only in the Underwriters' failure to disclose the alleged conflict created by the

Moreover, defendants correctly note that a constructive trust would be an inappropriate remedy here because an issuer has no property interest, in law or in equity, in the alleged excess compensation received by the underwriter.[83] Instead, LaSala's remedy here would be compensation for any losses suffered by Fatbrain from advice rendered by defendants that was colored by their conflict of interest. In denying the defendant underwriter's summary judgment motion in *Xpedior Creditor Trust*, I described plaintiff's breach of fiduciary duty allegations as follows: "[the underwriter] is alleged to have abused its fiduciary position and shared in profits made by its favored customers, *effectively leaving Xpedior's money on the table*."[84] Thus, the alleged damage to Fatbrain here is not measured by the unjust compensation received by defendant from third parties, but by Fatbrain's loss of IPO revenue, caused by its incomplete *ex ante* information regarding the underwriter's divided loyalties. Because this is an injury that can be fully compensated at law with money damages, a constructive trust is not

---

compensation arrangements.

[83]     *See* Def. Mem. at 13 (citing *Pereria v. Farace*, 413 F.3d 330, 340 (2d Cir. 2005) (for equitable action to lie, action must seek to *restore* to plaintiff property in defendant's possession)).

[84]     *Xpedior Creditor Trust*, 399 F. Supp. 2d at 383 (emphasis added).

available.[85] Thus, New York's three-year statute of limitations applies, and LaSala's new breach of fiduciary duty claim must be dismissed.

## C.     Leave to Amend

LaSala seeks leave to amend his complaint to add a request for an accounting to "clarify the amount and location of unlawful profits received by defendants, and [to] otherwise facilitate the tracing of such funds.[86]  But to the extent that LaSala desires to amend his complaint in the event of dismissal, granting such leave would be pointless.[87]  While LaSala and his attorneys have

---

[85]     *See Carlingford Ctr. Point Assocs. v. MR Realty Assocs. L.P.*, 772 N.Y.S.2d 273, 274 (1st Dep't 2004) ("Since plaintiffs primarily seek damages, and pursue [the equitable remedy of] an accounting merely to determine the amount of such damages, the motion court properly applied the shorter, three-year limitations period."); *Gold Sun Shipping Ltd. v. Ionian Transport, Inc.*, 666 N.Y.S.2d 677, 678 (2d Dep't 1997) (dismissing constructive trust because full legal relief was available); *cf. Spitzer v. Schussel*, 792 N.Y.S.2d 798, 801 (Sup. Ct. N.Y. Co. 2005) (quotation and citation omitted, emphasis added) (when plaintiff sought both equitable remedies and monetary relief, six-year statute of limitations applied because "no adequate remedy at law will provide the *complete* relief requested," and when court judged sought-after monetary relief to be "ancillary" to primary relief requested such as accounting and removal of board members); *Knudson*, 534 U.S. at 229 (Ginsburg, J., dissenting) (citation omitted) ("Restitutionary recoveries are based on the defendant's gain, not on the plaintiff's loss.").

[86]     Pl. Mem. at 17 n.5.

[87]     LaSala's proposed amendment to add a request for an accounting would be futile because, by itself, it would not render the nature of his breach of fiduciary duty claim equitable.  *See Carlingford Ctr. Point Assocs.,* 772 N.Y.S.2d at 274.

granting such leave would be pointless.[87]  While LaSala and his attorneys have worked diligently to protect the interests of the intended beneficiaries of the Assigned Claims, they have twice failed to state a viable claim within the terms of the assignment from the Issuers.  Thus, this action is now dismissed with prejudice.[88]

## V.    CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted, with prejudice, and plaintiffs' cross-motion for consolidation is denied as moot. The Clerk of the Court is directed to close the pending motions [numbers 45 and 50 on the docket sheet].  The stay of all LaSala Actions, entered on August 30, 2005, is hereby lifted.  Additionally, the Clerk of the Court is directed to close the LaSala Actions (and all pending motions in those actions) listed in Appendix I.

---

[87]    LaSala's proposed amendment to add a request for an accounting would be futile because, by itself, it would not render the nature of his breach of fiduciary duty claim equitable.  *See Carlingford Ctr. Point Assocs.,* 772 N.Y.S.2d at 274.

[88]    While these actions are dismissed, to the extent that the IPO Litigation plaintiffs and Issuers consider assignment of Issuer claims to be a valuable part of the Issuers Settlement, they can always renegotiate that settlement to include assignment of different and potentially viable claims against the *tolling* underwriters.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           February 24, 2006

**For Plaintiff:**

Frederick Taylor Isquith, Esq.
Daniel W. Krasner, Esq.
Alexander H. Schmidt, Esq.
WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP
270 Madison Avenue
New York, NY 10016
(212) 545-4600

Melvyn I. Weiss, Esq.
MILBERG WEISS BERSHAD & SCHULMAN LLP
One Pennsylvania Plaza
New York, NY 10119-0165
(212) 594-5300

Stanley Bernstein, Esq.
BERNSTEIN LIEBHARD & LIFSHITZ, LLP
10 East 40th Street
New York, NY 10016
(212) 779-1414

**For Defendant Needham & Company:**

Sarah Schrank Gold, Esq.
PROSKAUER ROSE LLP
1585 Broadway
New York, NY 10036
(212) 969-3000

**For Defendant J.P. Morgan Securities, Inc.**

Joseph Michael McLaughlin, Esq.
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue

New York, NY 10017
(212) 455-2000

**For Defendant Morgan Stanley**

Brant W. Bishop, Esq.
Andrew B. Clubok, Esq.
Steven A. Engel, Esq.
KIRKLAND AND ELLIS LLP
655 Fifteenth Street NW, Suite 1200
Washington, DC 20005
(202) 879-5000

**Additional Liaison Counsel for *In re Initial Public Offering Sec. Litig.*, 21 MC 92 (SAS)**

**For IPO Litigation Defendants (Underwriters):**

Gandolfo V. DiBlasi, Esq.
Penny Shane, Esq.
SULLIVAN & CROMWELL
125 Broad Street
New York, NY 10004-2498
(212) 558-4000

**For IPO Litigation Defendants (Issuers):**

Jack C. Auspitz, Esq.
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, NY 10104-8000
(212) 468-8000

## Appendix I - Actions Governed by the Resolution of Issues in this Opinion

**The Clerk is directed to close the following cases pursuant to this Opinion and Order and the stipulation of the parties:**

### Case Name

1.  LaSala (as assignee of theGlobe.com) v. J.P. Morgan Sec., 04 Civ. 8957
2.  LaSala (Fatbrain.com) v. Needham & Co., 04 Civ. 9237
3.  LaSala (Ticketmaster) v. Allen & Co., 04 Civ. 9529
4.  LaSala (Concur Techs.) v. J.P. Morgan Sec., 04 Civ. 9912
5.  LaSala (CBS Marketwatch) v. Morgan Stanley, 05 Civ. 0382
6.  LaSala (Covad Communications Group) v. J.P. Morgan Sec., 05 Civ. 0760
7.  LaSala (Perot Systems Corp.) v. Morgan Stanley, 05 Civ. 1060
8.  LaSala (Pacific Internet Ltd.) v. J.P. Morgan Sec., 05 Civ. 1553
9.  LaSala (Modem Media) v. Morgan Stanley, 05 Civ. 1554
10. LaSala (SBCIS/Prodigy Communications) v. Prudential, 05 Civ. 1987

11. LaSala (Verticalnet) v. J.P. Morgan Sec., 05 Civ. 1988
12. LaSala (WebMD Corp.) v. Morgan Stanley, 05 Civ. 1989
13. LaSala (Bottomline Tech.) v. J.P. Morgan Sec., 05 Civ. 2039
14. LaSala (Vignette Corp.) v. Morgan Stanley, 05 Civ. 2243
15. LaSala (Intraware) v. J.P. Morgan Sec. 05 Civ. 2393
16. LaSala (iVillage, Inc.) v. J.P. Morgan Sec., 05 Civ. 2983
17. LaSala (AutoWeb.com) v. Morgan Stanley, 05 Civ. 3167
18. LaSala (Autobytel.com) v. Morgan Stanley, 05 Civ. 3222
19. LaSala (Critical Path) v. J.P. Morgan Sec., 05 Civ. 3322
20. LaSala (Ziff-Davis) v. J.P. Morgan Sec., 05 Civ. 3389

21. LaSala (Priceline.com) v. Morgan Stanley, 05 Civ. 3390
22. LaSala (Extreme Networks) v. Morgan Stanley, 05 Civ. 3649
23. LaSala (Net Perceptions) v. J.P. Morgan Sec., 05 Civ. 4075
24. LaSala (Marimba) v. Morgan Stanley, 05 Civ. 4267
25. LaSala (Portal Software) v. J.P. Morgan Sec., 05 Civ. 4431
26. LaSala (Radio One) v. Prudential Equity Group, 05 Civ. 4474
27. LaSala (TheStreet.com) v. J.P. Morgan Sec., 05 Civ. 4573
28. LaSala (Copper Mountain Networks) v. Morgan Stanley, 05 Civ. 4659
29. LaSala (Alloy Online) v. Prudential Equity Group, 05 Civ. 4682
30. LaSala (Redback Networks) v. Morgan Stanley, 05 Civ. 4762

31. LaSala (Brocade Communications) v. Morgan Stanley, 05 Civ. 4955
32. LaSala (F5 Networks) v. J.P. Morgan Sec., 05 Civ. 5291
33. LaSala (High Speed Access Corp.) v. J.P. Morgan Sec., 05 Civ. 5292
34. LaSala (Openware Servs.) v. J.P. Morgan Sec., 05 Civ. 5506
35. LaSala (Overture Servs.) v. J.P. Morgan Sec., 05 Civ. 5665

36.    LaSala (Ariba) v. Morgan Stanley, 05 Civ. 5858
37.    LaSala (Cybersource) v. J.P. Morgan Sec., 05 Civ. 5859
38.    LaSala (Juniper Networks) v. J.P. Morgan Sec., 05 Civ. 5877
39.    LaSala (Stamps.com) v. Prudential Equity Group, 05 Civ. 5878
40.    LaSala (E-Loan) v. J.P. Morgan Sec., 05 Civ. 6019

41.    LaSala (AskJeeves) v. Morgan Stanley, 05 Civ. 6172
42.    LaSala (Primus Knowledge Solutions) v. J.P. Morgan Sec. 05 Civ. 6173
43.    LaSala (Axeda Systems) v. Prudential Equity Group, 05 Civ. 6454
44.    LaSala (Paradyne Networks) v. J.P. Morgan Sec., 05 Civ. 6455
45.    LaSala (Audible) v. J.P. Morgan Sec., 05 Civ. 6456
46.    LaSala (Drugstore.com) v. Morgan Stanley, 05 Civ. 6625
47.    LaSala (NexPrise) v. Morgan Stanley, 05 Civ. 6626
48.    LaSala (Net2Phone) v. Morgan Stanley, 05 Civ. 6627
49.    LaSala (Internet Initiative) v. Morgan Stanley, 05 Civ. 6916
50.    LaSala (Fair Isaac) v. J.P. Morgan Sec., 05 Civ. 7099

51.    LaSala (Red Hat) v. J.P. Morgan Sec., 05 Civ. 7135
52.    LaSala (Silverstream Software) v. Morgan Stanley, 05 Civ. 7246
53.    LaSala (Agile Software) v. Morgan Stanley, 05 Civ. 7353
54.    LaSala (Lionbridge Techs.) v. Prudential Equity Group, 05 Civ. 7354
55.    LaSala (Wink Communications) v. J.P. Morgan Sec., 05 Civ. 7364
56.    LaSala (Netsilicon) v. J.P. Morgan. Sec., 05 Civ. 8029
57.    LaSala (Kana Software) v. J.P. Morgan Sec., 05 Civ. 8166
58.    LaSala (eGain Communications) v. Prudential Equity Group, 05 Civ. 8224
59.    LaSala (Foundry Networks) v. J.P. Morgan Sec., 05 Civ. 8323
60.    LaSala (ITXC Corp.) v. J.P. Morgan Sec., 05 Civ. 8325

61.    LaSala (Tivo) v. J.P. Morgan Sec., 05 Civ. 8383
62.    LaSala (_____)v. Morgan Stanley, 05 Civ. 8385
63.    LaSala (Visiqor Solutions) v. J.P. Morgan Sec., 05 Civ. 8455
64.    LaSala (Digital Insight Corp.) v. Morgan Stanley, 05 Civ. 8456
65.    LaSala (Smartdisk Corp.) v. J.P. Morgan Sec., 05 Civ. 8547
66.    LaSala (Paragon) v. J.P. Morgan Sec., 05 Civ. 8601
67.    LaSala (Women.com) v. Morgan Stanley, 05 Civ. 8734
68.    LaSala (WWE) v. J.P. Morgan Sec., 05 Civ. 8860
69.    LaSala (Martha Stewart Living) v. Morgan Stanley, 05 Civ. 8863
70.    LaSala (Aether) v. Morgan Stanley, 05 Civ. 8900

71.    LaSala (BSquare) v. J.P. Morgan Sec., 05 Civ. 8901
72.    LaSala (Radio Unica) v. Prudential Equity Group, 05 Civ. 8902
73.    LaSala (Naviste) v. J.P. Morgan Sec., 05 Civ. 8975
74.    LaSala (Needham) v. J.P. Morgan Sec., 05 Civ. 8976
75.    LaSala (Sycamore) v. Morgan Stanley, 05 Civ. 8977
76.    LaSala (JNI) v. J.P. Morgan Sec., 05 Civ. 9129

77. LaSala (Intertrust) v. Morgan Stanley, 05 Civ. 9130
78. LaSala (Spanish Broadcasting Corp.) v. Prudential Equity Group, 05 Civ. 9150
79. LaSala (Akami) v. Morgan Stanley, 05 Civ. 9173
80. LaSala (Tickets.com) v. Morgan Stanley, 05 Civ. 9360

81. LaSala (BeFree) v. J.P. Morgan Sec., 05 Civ. 9361
82. LaSala (Wireless Facilities) v. J.P. Morgan Sec., 05 Civ. 9362
83. LaSala (Cobalt Networks) v. J.P. Morgan Sec., 05 Civ. 9363
84. LaSala (Expedia) v. Morgan Stanley, 05 Civ. 9503
85. LaSala (iBasis) v. J.P. Morgan Sec., 05 Civ. 9505
86. LaSala (NextLevel) v. Prudential Equity Group, 05 Civ. 9506
87. LaSala (Telefonica SA) v. J.P. Morgan Sec., 05 Civ. 9626
88. LaSala (Agilent) v. Morgan Stanley, 05 Civ. 9739
89. LaSala (Blue Coat/Cacheflow) v. Morgan Stanley, 05 Civ. 9741
90. LaSala (____) v. Morgan Stanley, 05 Civ. 9742

91. LaSala (SciQuest) v. J.P. Morgan Sec., 05 Civ. 9799
92. LaSala (Mediaplex) v. J.P. Morgan Sec., 05 Civ. 9800
93. LaSala (Digital Impact) v. J.P. Morgan Sec., 05 Civ. 9802
94. LaSala (McAfee) v. Morgan Stanley, 05 Civ. 10125
95. LaSala (Freemarkers/Ariba) v. Morgan Stanley, 05 Civ. 10237
96. LaSala (Airnet) v. J.P. Morgan Sec., 05 Civ. 10238
97. LaSala (Agency) v. J.P. Morgan Sec., 05 Civ. 10301
98. LaSala (El Sitio) v. J.P. Morgan Sec., 05 Civ. 10329
99. LaSala (Caliper) v. J.P. Morgan Sec., 05 Civ. 10379
100. LaSala (Goremote) v. Prudential Equity Group, 05 Civ. 10381

101. LaSala (Trinsic) v. J.P. Morgan Sec., 05 Civ. 10522
102. LaSala (Regent) v. Morgan Stanley, 06 Civ. 555
103. LaSala (Sequenom) v. J.P. Morgan Sec., 06 Civ. 670
104. LaSala (Avanex) v. Morgan Stanley, 06 Civ. 671
105. LaSala (Terabeam) v. J.P. Morgan Sec., 06 Civ. 739
106. LaSala (Buy.com) v. J.P. Morgan Sec., 06 Civ. 957
107. LaSala (Microsoft/Vicinity) v. J.P. Morgan Sec., 06 Civ. 1023
108. LaSala (Nextel Partners) v. Morgan Stanley, 06 Civ. 1076
109. LaSala (ViaNet Works) v. Morgan Stanley, 06 Civ. 1083
110. LaSala (WebMethods) v. Morgan Stanley, 06 Civ. 1084

111. LaSala (Diversa) v. J.P. Morgan Sec., 06 Civ. 1123
112. LaSala (AvenueA) v. Morgan Stanley, 06 Civ. 1231
113. LaSala (Eloquent) v. Morgan Stanley, 06 Civ. 1232
114. LaSala (Apropos Tech.) v. J.P. Morgan Sec., 06 Civ. 1303